IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH DAVIS, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 24-CV-1563 |
| : | |
| THE CITY OF PHILADELPHIA, *et al.*, : | |
|     Defendants. : | |

MEMORANDUM

**SCHMEHL, J. /s/JLS**　　　　　　　　　　　　　　　　　　　　　　　　　　　**July 23, 2024**

Currently before the Court is a Complaint filed by Plaintiff Keith Davis which raises civil rights claims based on Davis's allegation that he was illegally prevented from representing a criminal defendant in state court even though he held a power of attorney. Davis seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Davis leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim with the exception of his First Amendment claims against three officers of the Philadelphia Sheriff's Department in their individual capacities as discussed further below.

I.　　FACTUAL ALLEGATIONS

The events giving rise to Davis's claims occurred on April 12, 2024 in the Philadelphia Court of Common Pleas. (Compl. at 2.)[1] Davis, who is not an attorney, sought to represent a criminal defendant in a proceeding before the Honorable Tracy Brandeis Roman by virtue of a power of attorney, but was prevented from doing so. (*See id.* at 3.) Specifically, Davis alleges that Judge Roman and the Assistant District Attorney in the case, John Consheck, "found [him]

---

[1] The Court adopts the pagination on the Complaint provided by the CM/ECF docketing system.

guilty in open Court of the unauthorize practice of law" by "making themselves Pa. State legislatures and vetoed the Title 20 Pa. 5603(s) claiming that it only applies to the civil side of the Court." (*Id.*)

In other words, Davis essentially alleges that Pennsylvania law governing powers of attorney permits him, a non-attorney, to provide legal representation to a criminal defendant in court for whom he holds a power of attorney. Specifically, he refers to a subsection of Pennsylvania's Probate Code pertaining to powers of attorney, which states that an agent may:

> (1) Institute, prosecute, defend, abandon, arbitrate, compromise, settle or otherwise dispose of, and appear for the principal in, any legal proceedings before any tribunal regarding any claim relating to the principal or to any property interest of the principal.
>
> (2) Collect and receipt for any claim or settlement proceeds; waive or release rights of the principal; employ and discharge attorneys and others on such terms (including contingent fee arrangements) as the agent deems appropriate.
>
> (3) In general, exercise all powers with respect to claims and litigation that the principal could if present.

20 Pa. Stat. and Cons. Stat. § 5603(s).

Davis also cites another subsection of the statute, pertaining to "power to engage in commodity and option transactions," which permits an agent to:

> (1) Buy, sell, exchange, assign, convey, settle and exercise commodities future contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions.
>
> (2) Establish or continue option accounts for the principal with any securities of a futures broker.
>
> (3) In general, exercise all powers with respect to commodity and option transactions that the principal could if present.

*Id*. § 5603(l). Davis alleges that Judge Roman and ADA Consheck had no subject matter jurisdiction to abolish these statutory provisions in a manner that prevented him from

representing the criminal defendant, and that they did so while acting pursuant to a practice of the City of Philadelphia.  (Compl. at 3; *id.* at 7 (alleging that the City of Philadelphia "has a hidden practice of obstructing any form of pro se or power of attorney litigation by its judges and other officers of the Court and then deliberately summones [sic] the Philadelphia Sheriffs to enforce the Sedition Act against the American People right to be heard in a Court of law.").)

According to Davis, during the proceeding Judge Roman and ADA Consheck "summoned" employees of the Philadelphia Sheriff's Department "who stood right beside [Davis] and the principal in open Court with the door to the lockup section opened before everyone in the Courtroom and threatened [Davis] and his principal with obstruction of justice for holding up the proceedings." (*Id.* at 4.)  Davis alleges that he was not responsible for holding up the proceedings, and that any delay was instead attributable to attorneys for the defendant who had abandoned him and failed to properly withdraw.  (*Id.*)  According to Davis, Judge Roman had appointed attorneys for the criminal defendant who were unprepared "and when the Power of Attorney [meaning Davis] protested the lawyers machinations, [Judge Roman] and Prosecutor switch the blame upon the [criminal defendant] and his Power of Attorney [meaning Davis] for obstruction of justice to avoid the speedy trial violations by the Commonwealth."  (*Id.*)

Davis also alleges that on the same day as the hearing before Judge Roman, he began distributing pictures of "Judges of the Third Circuit Court" whom he believes "sabotage[] African Americans right to access to the courts and then take immunity to the practice."  (*Id.* at 2.)  Davis alleges that he was "accosted" outside of the courtroom by three employees of the Philadelphia Sheriff's Department — P. Fallen, Cunningham, and M. Santiago — for distributing these pictures outside the courtroom to members of the public, some of whom were

3

attending court proceedings. (*Id.*) The officers allegedly confiscated Davis's pictures and "barred" him from "relaying [his] message" even though he "did not disturb any judicial proceedings." (*Id.*; *see also id.* at 6 (alleging that Davis was "bullied by the Philadelphia Sheriffs and intimidated by them for showing picture and names of federal judge who invoke immunity . . . in which the pictures were confiscated and not allowed to be handed to the general public").)

Davis brings constitutional claims based on the above allegations against the City of Philadelphia, Judge Roman, ADA Consheck, and Officers Fallen, Cunningham and Santiago pursuant to 42 U.S.C. § 1983.[2] The individual Defendants are sued in their individual and official capacities. (Compl. at 1.) Davis seeks damages, an injunction essentially reversing Judge Roman's ruling and requiring the Judge to accept his power of attorney, and an injunction directing the officers to return his fliers and to permit him to speak. (*Id.* at 7-8.)

## II.  STANDARD OF REVIEW

The Court grants Davis leave to proceed *in forma pauperis* because it appears that he does not have the ability to pre-pay the fees to commence this case. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

---

[2] Although the Complaint also cites to 42 U.S.C. § 1985, Davis has not alleged a factual basis for a claim under this provision. *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."); *Rose v. Guanowsky*, No. 21-3280, 2022 WL 910341, at *1 (3d Cir. Mar. 29, 2022) (affirming dismissal of § 1985 claims "supported only by conclusory allegations that [Defendant's] actions were racially motivated"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd*, 770 F.2d 1070 (3d Cir. 1985), *and aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985). Accordingly, any § 1985 claims must be dismissed.

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Davis is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

**III.    DISCUSSION**

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).

To plead a § 1983 claim against a municipal entity, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). Claims against municipal employees in their official capacity are governed by the same standard, since "official capacity" claims are treated the same as claims against the governmental entity that employs those defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). However, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")).

    **A.**    **Claims Based on the Rejection of the Power of Attorney**

Davis's claims primarily rest on his assertion that his constitutional rights were violated because Judge Roman and ADA Consheck would not permit him to represent a criminal defendant in state court by virtue of a power of attorney. These claims are not plausible because they are premised upon a legally erroneous interpretation of the relevant Pennsylvania statute. The statutory provisions upon which Davis relies:

> do not empower an individual who is not licensed as an attorney-at-law to practice law in this Commonwealth. To construe the [statue] so as to permit a non-attorney to appear and represent a principal in a court of record would be to permit the licensing and admission requirements to be circumvented. In addition, such an interpretation would effectively abrogate the Judicial Code's prohibition against the unlicensed practice of law. The potential problems created by the use of the power of attorney as a means of encouraging the unauthorized practice of law are obvious. Of course, if the principal wishes to proceed pro se, he or she

6

> may do so. However, the power of attorney cannot be used as a device to license laypersons to act as an attorney-at-law.
>
> ***
>
> Section 5603(s)(1) authorizes the agent/attorney-in-fact to make decisions and undertake actions that are within the traditional province of a client. For example, the decisions whether to prosecute, defend, settle, or arbitrate a claim belong to the client, not to the attorney. The agent, therefore, while lacking authority to litigate pro se in his or her principal's stead, creates and controls the attorney-client relationship as fully as if he or she were the principal.

*Kohlman v. W. Pennsylvania Hosp.*, 652 A.2d 849, 852 (Pa. Super. Ct. 1994); *see also Harris v. Philadelphia Police Dep't*, No. 06-CV-2192, 2006 WL 3025882, at *2 (E.D. Pa. Oct. 20, 2006) ("It is settled Pennsylvania law that the unlicensed, in-court representation of another is considered engaging in the prohibited practice of law and that a power of attorney does not overcome that prohibition."); *In re Est. of McLeod*, 307 A.3d 686, 686 n.1(Pa. Super. Ct. 2023) ("This Court has previously held that an agent's *pro se* 'legal representation' of a principal under a power of attorney is 'contrary to the [C]onstitution, the laws, and the public policy of this Commonwealth' and constitutes the unauthorized practice of law." (quoting *Kohlman*, 652 A.2d at 853)).

In other words, Davis's power of attorney did not authorize him to represent a criminal defendant in state court under Pennsylvania law. His allegations that his constitutional rights were violated because he was prohibited from using his power of attorney in that manner are therefore premised on an incorrect legal interpretation. Nor can Davis claim any independent constitutional right to represent another in court. *See McCoy v. Louisiana*, 584 U.S. 414, 421 (2018) (describing the Sixth Amendment right to proceed *pro se* as "personal"); *MOVE Org. v. U.S. Dep't of Just.*, 555 F. Supp. 684, 693 n.34 (E.D. Pa. 1983) ("[T]here is no first-, fifth-, or sixth-amendment right to representation by a layman."). In other words, Davis cannot state a plausible claim based on the fact that Judge Roman prevented him from representing a criminal

7

defendant for whom he held a power of attorney. To the extent Davis raises separate claims based on his suggestion that Judge Roman summoned officers of the Sheriff's Department to essentially intimidate him from exercising any right of representation he held under the power of attorney (allegedly pursuant to a City custom), these claims also necessarily fail since, in actually, Davis had no such right.[3]

### B.  Claims Based on Confiscation of the Pictures

Davis's only remaining claim pertains to his allegation that three officers of the Sherriff's Department — Fallen, Cunningham and Santiago — "accosted" him outside the courtroom and confiscated pictures of judges he sought to distribute to express his views about those judges, even though he was not interrupting any judicial proceedings.[4] This claim is best construed as

---

[3] Further, despite Davis's arguments to the contrary, Judge Roman is entitled to absolute judicial immunity from these claims because they arise from her judicial acts in conducting proceedings in a criminal case before her and controlling her courtroom. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (judge acted in judicial capacity when he signed petition to have plaintiff sterilized); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*) (absolute judicial immunity generally covers claims for injunctive relief as well as damages); *see also Mireles v. Waco*, 502 U.S. 9, 13 (1991) (*per curiam*) (judicial immunity applied to claims based on judicial order directing police officers to seize attorney who failed to appear "with excessive force" and bring the attorney to his courtroom); *Stevens v. Osuna*, 877 F.3d 1293, 1305 (11th Cir. 2017) ("Judges have an obligation to maintain control over the courthouse and over the conduct of persons in the courthouse; the issuance of an order removing persons from the courthouse in the interest of maintaining such control is an ordinary function performed by judges: for example, where a person might not be complying with a court order or might be impeding the judicial proceeding." (footnote omitted)). Similarly, ADA Consheck is entitled to absolute prosecutorial immunity from damages claims under § 1983 based on his advocacy on behalf of the Commonwealth during the criminal proceeding before Judge Roman. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (prosecutors are entitled to absolute immunity from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "presenting the State's case."); *Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024) ("Prosecutors . . . are absolutely immune from liability under § 1983 for engaging in conduct that serves a quasi-judicial function.").

[4] Davis does not allege that Judge Roman or ADA Consheck participated in or directed these actions, so he has not stated a claim against them based on these events. *See Rode*, 845 F.2d at 1207. Rather, the Court understands these claims to be asserted against the three officers.

8

arising under the First Amendment. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). At this early stage of the litigation, the Court will permit this claim to proceed against Fallen, Cunningham and Santiago in their individual capacities. *See Huminski v. Corsones*, 386 F.3d 116, 121 (2d Cir. 2004), *as amended on reh'g*, 396 F.3d 53 (2d Cir. 2005) (holding that "long-time critic of the Vermont justice system who has sought to disseminate his message using a wide variety of means and media" had "an individual First Amendment right of access to court proceedings even though he was not a party to and had no other official connection with them" and could not be singled out "for a prohibition against his ability to express himself on any subject" in the courthouse); *see also Braun v. Baldwin*, 346 F.3d 761, 763 (7th Cir. 2003) (discussing the First Amendment in the context of protesters who sought to advocate for jury nullification in a courthouse lobby); *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) (holding that "[a] courthouse—and, especially, a courtroom—is a nonpublic forum," so speech may be restricted provided the restrictions are content neutral and reasonable, such that it was permissible for judge to direct attorney to remove political button in the courtroom).

However, to the extent this claim is also raised against the City of Philadelphia or against these Defendants in their official capacities, it is dismissed because Davis has not alleged any factual basis from which the Court could infer that the confiscation of his pictures outside the courtroom stemmed from a municipal policy or custom.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Davis leave to proceed *in forma pauperis* and dismiss his Complaint with the exception of his § 1983 claim against Fallen, Cunningham and Santiago in their individual capacities for violating his First Amendment rights by

9

confiscating his pictures of judges and preventing him from disseminating his message to the public. The Court concludes that amendment of the dismissed claims would be futile. An order follows, which directs service of the Complaint on the remaining Defendants.

                              **BY THE COURT:**

                              **/s/ Jeffrey L. Schmehl**
                              **JEFFREY L. SCHMEHL, J.**