## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH DAVIS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-1563** |
| | : | |
| **P. FALLEN,** *et al.*, | : | |
| **Defendants.** | : | |

### <u>MEMORANDUM</u>

**SCHMEHL, J. /s/ JLS**                                              **OCTOBER  29, 2024**

Currently before the Court is a Motion to Dismiss a First Amendment claim raised by Plaintiff Keith Davis, pursuant to 42 U.S.C.§ 1983, against three employees of the Philadelphia Sheriff's Department—Officers P. Fallen, Cunningham, and M. Santiago—based on their alleged confiscation of pictures of judges that Davis sought to disseminate at the state courthouse.[1]  (ECF No. 17.)  The Defendants argue that Davis failed to allege a plausible First Amendment violation and that, in any event, they are entitled to qualified immunity.  (*Id.* at 4.)  Davis's Response to the Motion is also before the Court, as are his "Supplemental Replies."  (ECF Nos. 19, 22, 23.)  For the following reasons, the Court will grant the Motion and dismiss Davis's remaining claims.

---

[1] After granting Davis leave to proceed *in forma pauperis*, the Court screened his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed several claims, including claims based on Davis's allegation that his rights were denied when he was not permitted to represent a criminal defendant in state court. *Davis v. City of Philadelphia*, No. 24-1563, 2024 WL 3511621, at *4 (E.D. Pa. July 23, 2024).  The only claim that proceeded to service was Davis's claim against Fallen, Cunningham and Santiago in their individual capacities for violating his First Amendment rights.  *Id.* at *5.  Only that claim is at issue in the pending Motion.

## I.     FACTUAL ALLEGATIONS

Davis's First Amendment claim against the Officers is based on an incident that occurred at the Juanita Kidd Stout Center for Criminal Justice in Philadelphia.  It appears Davis was present at the court because, although he is not an attorney, he sought to represent a criminal defendant.  At some point during the day, Davis began distributing pictures of federal Judges who sit on the United States District Court for the Eastern District of Pennsylvania, including the undersigned, whom he believes "sabotage[] African Americans right to access to the courts and then take immunity to the practice," apparently because the judges have ruled against him in cases before them.  (Compl. at 2.)  Davis alleges that he was "accosted" by Officers Fallen, Cunningham, and Santiago while he was distributing these pictures to members of the public— some of whom were attending court proceedings—outside the courtroom.  (*Id.*)  The officers allegedly confiscated Davis's pictures and "barred" him from "relaying [his] message" even though he claims that he "did not disturb any judicial proceedings."[2]  (*Id.*; *see also id.* at 6 (alleging that Davis was "bullied by the Philadelphia Sheriffs and intimidated by them for showing picture and names of federal judges who invoke immunity . . . in which the pictures were confiscated and not allowed to be handed to the general public").)  Davis seeks damages and the return of his pictures.  (*Id.* at 7-8.)

## II.     STANDARD OF REVIEW

The Defendants bring their Motion pursuant to Federal Rule of Civil Procedure 12(b)(6). "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint."  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule

---

[2] Davis's Response to the Defendants' Motion suggests that he was in the courthouse lobby when he was disseminating the pictures.  (Resp. at 2.)

12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

## III.   DISCUSSION

The Defendants argue that:  (1) they did not violate Davis's First Amendment rights because in the context of a courthouse—a nonpublic forum—there is a need to "maintain order

and protect the fairness, dignity, and integrity of the judicial process," and Davis has not alleged

that he was subjected to an improper restriction in light of those purposes; and (2) in any event,

they are entitled to qualified immunity because it was not clearly established "that a reasonable

officer in the Deputies' position would have known that the confiscation of [Davis's] pamphlets

was a violation of his rights." (Mot. at 6-8.)  "The doctrine of qualified immunity protects

government officials 'from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).  To determine whether an official is entitled to qualified immunity, a

court must consider whether the plaintiff's factual allegations "make out a violation of a

constitutional right" that was "clearly established" at the time of the alleged misconduct.  *Id.* at

232.  To be "clearly established," a legal principle must be dictated by controlling authority such

that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks

to apply." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).  Application of this standard requires a high

degree of specificity, in that "[t]he rule's contours must be so well defined that it is 'clear to a

reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting

*Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  "[A] case directly on point [is not required], but

existing precedent must have placed the statutory or constitutional question beyond debate."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  "The 'ultimate question' in the qualified

immunity analysis 'is whether the defendant had fair warning that his conduct deprived his

victim of a constitutional right.'" *Williams v. Sec'y Pa. Dep't of Corr.*, --- F.4th ---, No. 22-2399,

2024 WL 4262139, at *7 (3d Cir. Sept. 20, 2024) (quoting *Schneyder v. Smith*, 653 F.3d 313,329

(3d Cir. 2011)).

The right at issue here can be characterized as the right to free speech and expression at a state courthouse.  "When it comes to First Amendment free speech challenges, not every public property is the same, and different types of property will require different treatment."  *Porter v. City of Philadelphia*, 975 F.3d 374, 386 (3d Cir. 2020) (internal quotations omitted).

> Traditional public forums are places that the government has historically held out for speech and assembly, such as public streets and parks.  Traditional public forums are entitled to the greatest protection of speech.  Accordingly, any content-based restrictions will receive strict scrutiny.  While the government may impose reasonable time, place, and manner restrictions on speech, viewpoint-based restrictions are prohibited.  Designated public forums are properties that have not traditionally been regarded as a public forum but are intentionally opened up for that purpose.  When the government opens a forum for speech-related activity, the same standards apply as in a traditional public forum.  Finally, a nonpublic forum (or limited public forum) is a public property that has not, as a matter of tradition or designation, been used for purposes of assembly and communication.  Rather, it is a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.

*Id.* at 386-87 (cleaned up).  Courts agree that the interior of a courthouse, such as the one at issue in this case, is considered a non-public forum.  *See, e.g.*, *Huminski v. Corsones,* 396 F.3d 53, 91 (2d Cir. 2005) (agreeing that "the interior of a courthouse is not a public forum" and collecting cases); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) ("The lobby of the courthouse is not a traditional public forum or a designated public forum, not a place open to the public for the presentation of views."); *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) ("A courthouse— and, especially, a courtroom—is a nonpublic forum.").  A nonpublic forum may be reserved for its intended purposes, and "[c]ontent-based restrictions on speech are valid so long as they are reasonable in light of the purpose of the forum and viewpoint neutral."  *Porter*, 975 F.3d at 387.

The Defendants persuasively argue that, although Davis's Complaint alleges a restriction on his speech, it is scant on details supporting an inference either that the restriction was unreasonable considering the purposes of the forum, or that the restriction was not viewpoint

neutral.  As the United States Court of Appeals for the Seventh Circuit has explained in rejecting the First Amendment claim of a plaintiff who sought to place a satirical sculpture of a district judge in the lobby of a federal courthouse:

> Nothing in the first amendment prevents the government from allowing sedate and decorous exhibits . . . while excluding the comic, the caustic, and the acerbic. Courts seek to induce in the jurors, witnesses, and litigants who pass through the lobby on the way to the courtrooms a serious cast of mind.  An implication in the lobby that judges do not take their oaths seriously, deal honestly with the facts, or respect the allocation of authority within the judiciary could undermine the seriousness with which other participants take their own oaths and tasks.  The judiciary does not show reruns of the Three Stooges in courthouse lobbies, and from the perspective of promoting the judicial mission a sculpture satirizing judges would be worse than old physical comedies.  No one doubts that displays in courtrooms and adjacent corridors may be limited to the icons of government, such as seals and flags, and that judges may insist that all those present behave in a dignified manner.  Why should this be less true of the lobby?  Newspapers and the streets outside are open to scathing criticism of what happens within the courthouse.  But the halls of justice may be kept hushed.  A preference for the somber over the sardonic within a courthouse is not viewpoint or even subject-matter discrimination.

*Sefick v. Gardner*, 164 F.3d at 373 (citation omitted); *see also Huminski*, 396 F.3d at 91 ("The function of a courthouse and its courtrooms is principally to facilitate the smooth operation of a government's judicial functions.").  Although the First Amendment still prevents the government from singling out particular individuals for disfavored speech, Davis does not allege sufficient factual matter from which it could be inferred that he was so targeted or otherwise subjected to an unreasonable restriction in violation of the First Amendment.  *Contra*, *Huminski*, 396 F.3d at 59 ("[A]lthough the Rutland courthouses and grounds are nonpublic forums, singling Huminski out for a prohibition against his ability to express himself on any subject in those locations violated his First Amendment right to express himself.").

In any event, the Court agrees with the Defendants that they are entitled to qualified immunity from Davis's First Amendment claim.  Neither Supreme Court nor Third Circuit

precedent would have placed the Defendants on notice that their acts were unconstitutional (assuming they were).  To the contrary, the weight of authority reflects that "prohibitions on speech within a courthouse have been routinely upheld."  *Verlo v. Martinez*, 820 F.3d 1113, 1141 (10th Cir. 2016).  In sum, it is apparent that the Defendants are entitled to qualified immunity in this case.  *See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 144-45 (3d Cir. 2017) ("Even if a right can be clearly established by circuit precedent despite disagreement in the courts of appeals, there does not appear to be any such consensus—much less the robust consensus—that we require to deem the right Barna asserts here as clearly established." (internal quotations and citations omitted)).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the Defendant's Motion to Dismiss Davis's First Amendment claim against them.  There is no basis for further amendment here.  A final dismissal Order will be entered separately.  *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**